N.H. Water Supply and Pollution Control Commission,
No. 6301.

FENTON G. KEYES ASSOCIATES

*v.*

NEW HAMPSHIRE WATER SUPPLY AND
POLLUTION CONTROLCOMMISSION

March 31, 1972.

*Sulloway, Hollis, Godfrey & Soden* and *Donald E. Gartrell*
(*Mr. Gartrell* orally) for the plaintiff.

*Warren B. Rudman,* attorney general, and *Donald W. Stever,
Jr.* (*Mr. Stever* orally) for the defendant.

GRIMES, J.   This purports to be an appeal under RSA 541:6
and RSA 149:14 from the refusal of the commission to agree
to an engineering fee for a sewerage and pollution control
project for the town of Hudson. It was filed here after the
commission had denied plaintiff's "motion for rehearing".

In its appeal petition plaintiff prays that this court direct the commission to award it the contract at its proposed fee, or in the alternative to remand the matter to the commission for further proceedings and that pending appeal the commission be enjoined from negotiating with other engineering firms regarding the contract.

The plaintiff was prequalified for employment as an engineering firm in planning and construction of projects under RSA 149:4 (XIV) (supp.). In April 1966 plaintiff began negotiations with the town of Hudson and the commission regarding a preliminary phase contract to survey and report on the pollution control needs of the town. It was retained, did the work and was paid a fee of $10,000.

In March 1971 plaintiff began negotiations for a contract regarding a design phase. The town notified the commission that it had not yet retained the plaintiff and would do so "subject to complete concurrence of the commission." After receiving the commission's standard contract form the plaintiff submitted a draft contract with data to substantiate its fee for the entire project including both work eligible and not eligible for state and federal aid. After review and discussion by the commission staff with plaintiff the staff determined that it could not approve a fee in excess of $90,000. The plaintiff had originally set its fee at $162,225.31 but later reduced it to $144,699. The commission staff and plaintiff were unable to agree on a fee and negotiations were terminated on June 14, 1971 by a letter from the commission staff. A "motion for rehearing" was filed later that month and by letter dated July 15, 1971 the commission notified plaintiff's attorney that the actions of the staff were affirmed.

The commission is given broad authority over the administration and enforcement of our statutes designed to control water pollution and the disposal of wastes. *See Roy v. Water Supply Comm'n,* 112 N.H. 87, 289 A.2d 650 (1972). This includes recommendation for the classification of all streams, lakes, ponds and tidal waters, the approval of applications for state or federal aid, setting the standards of design and construction for sewerage and sewage or waste treatment systems and authority to reject or modify or approve all

engineering or other documents associated with the design and construction of pollution control projects to provide maximum benefit "with the least expenditure of federal, state and local funds." RSA 149:4 (IX) (supp.).

Under RSA 149:4 (XIII) (supp.) it is given the authority to "review, establish maximum state participation fees and modify in any other way which in the judgment of the commission will promote economy and the purposes of this chapter, and following such review or modification, approve and cosign jointly with the municipality or other governmental subdivision concerned any proposed contracts . . . for engineering services related to sewerage and other pollution control facilities. Further, the commission shall prescribe the contract documents to be employed and may provide for the assessment of liquidated damages for failure to complete the work within the time stipulated therefor."

It is also empowered under subsection XIV to "establish rules and regulations governing the prequalification of consulting engineers employed in the planning and construction of public water supply and pollution control projects" and to "prescribe the contract award procedures to be followed in the awarding of construction contracts involving state financial assistance." The bonds of any political subdivision issued to finance any project within the scope of the statute may be guaranteed by the State. RSA 149:5(supp.).

We hold that the commission was acting within its authority when it established a maximum fee for the entire undertaking beyond which the State would not participate in the contract. The commission is made a full and equal party to the contract. It is mandated to establish the maximum fee for which the State will participate in the contract and to modify the contract in any other way as in its judgment will "promote economy and the purposes of this chapter." RSA 149:4 (XIII) (supp.). One purpose of the chapter is to obtain maximum benefits with the "least expenditure of federal, state and local funds." RSA 149:4 (IX) (supp.). *See also* RSA ch. 149-B(supp.).

Engineers who are prequalified by the commission have no right to obtain any particular contract. The legislature, in our opinion, intended that in negotiations between the

engineer and the commission over the fee the competitive forces of the open market are to have full play. The commission was not in the position of fixing rates as in the case of a public utility but was simply negotiating in the free market for the purchase of services. For this reason *Ferretti* v. *Jackson*, 88 N.H. 296, 188 A. 474 (1936) relied on by plaintiff, which struck down the price fixing authority of the Milk Control Board for lack of suitable standards, is inapposite. The particular executive function with which we are here concerned is not reviewable.

*Appeal dismissed.*

GRIFFITH, J., did not sit; the others concurred.